UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANITA LEASSEAR,<br><br>      Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>      Defendant. | O<br><br>No. CV 05-0165-RC<br><br>OPINION AND ORDER |

Plaintiff Anita Leassear filed a complaint on January 10, 2005, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on June 3, 2005, and the parties filed a joint stipulation on August 22, 2005.

//

//

//

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of the Social Security Administration, is substituted as defendant in the action.

**BACKGROUND**

**I**

On August 29, 2000, plaintiff filed a claim for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an inability to work since September 15, 1995, due to her fracturing her left arm, resulting in nerve and ligament disruption. Certified Administrative Record ("A.R.") 74-76, 85, 306-08, 317. The plaintiff's application was denied on October 26, 2000. A.R. 56-60, 288-92. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Earl J. Waits ("the ALJ") on October 31, 2001. A.R. 29-52, 62-63, 261-84, 294-95. On November 27, 2001, the ALJ issued a decision finding plaintiff is not disabled. A.R. 16-27, 248-59. On January 31, 2002, the ALJ issued an amended decision, again finding plaintiff not disabled. A.R. 4-15, 236-47.

On January 28, 2002, plaintiff filed a complaint in the district court, Leassear v. Barnhart, CV 02-0834-RC ("Leassear I"), which, pursuant to the parties' stipulation, was remanded to the Social Security Administration to develop the record regarding plaintiff's mental impairment. A.R. 405-08. The Appeals Council, in turn, remanded the matter to the ALJ for further proceedings, A.R. 409-12, and an administrative hearing was held on December 17, 2002, and August 28, 2003. A.R. 195-230. On October 17, 2003, the ALJ issued a new decision, again finding plaintiff is not disabled. A.R. 176-92. The plaintiff sought review from the Appeals Council, which denied review on November 4, 2004. A.R. 169-75.

//

**II**

The plaintiff was born on February 11, 1964, and is currently 43 years old. A.R. 32, 74, 306. She has a tenth-grade education, and has previously worked as a cashier. A.R. 32-35, 86, 91, 94-97, 318, 323, 326-29, 424.

On May 24, 2001, plaintiff began treatment at the Los Angeles County Department of Mental Health ("DMH"),[2] where a licensed clinical social worker diagnosed her with an unspecified depressive disorder and an unspecified personality disorder and determined her Global Assessment of Functioning ("GAF") to be 38.[3] A.R. 160-64, 392-96. On June 27, 2001, a DMH clinical psychologist diagnosed plaintiff with post-traumatic stress disorder and determined her GAF to be 50.[4] A.R. 165-67, 397-99. The plaintiff continued to receive treatment at DMH

---

[2] Although plaintiff has both physical and mental complaints, A.R. 109-33, 341-65, she challenges only the ALJ's assessment of her mental complaints. Thus, the Court does not discuss plaintiff's physical complaints, many of which arise from an automobile accident and a gunshot wound.

[3] A GAF of 38 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[4] A GAF of 45-50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

1  until October 2, 2002, when she was discharged.  A.R. 150-58, 382-90,
2  427-35.

4  On September 27, 2002, plaintiff began mental health treatment at
5  Didi Hirsch Community Mental Health Center ("Hirsch Center"), where a
6  marriage and family therapist diagnosed her as having an unspecified
7  psychotic disorder, a major depressive disorder with psychotic
8  features, and determined plaintiff's GAF to be 49.  A.R. 460-64.  On
9  October 17, 2002, Danius Mulokas, M.D., examined plaintiff at Hirsch
10 Center and diagnosed her with recurrent major depression, in partial
11 remission, determined her GAF to be 45, and prescribed medication to
12 plaintiff.  A.R. 475.  On November 21, 2002, Dr. Mulokas rediagnosed
13 plaintiff as having recurrent major depression, in partial remission,
14 with psychotic features, and determined her GAF to be 45.  A.R. 437-
15 40.  Dr. Mulokas opined plaintiff would miss more than 3 days of work
16 each month due to her mental condition, and would have difficulty
17 working due to comprehension difficulties, slowed responses,
18 isolation, and episodes of auditory hallucinations.  A.R. 439-40.  Dr.
19 Mulokas opined plaintiff has "marked" restriction in her activities of
20 daily living and social functioning; "frequent" deficiencies of
21 concentration, persistence or pace; and had "repeated" episodes of
22 deterioration or decompensation in work or work-like settings.  A.R.
23 440.

25 On December 17, 2002, medical expert Franklin Drucker, M.D.,
26 testified at plaintiff's administrative hearing that plaintiff
27 "appears . . . somewhat depressed, and has at times reported psychotic
28 phenomena."  A.R. 197-201.  However, Dr. Drucker found plaintiff's

4

medical records were "largely illegible" and recommended a consultative psychological examination to assess plaintiff's mental condition. A.R. 197-98. The consultative psychology examination was conducted on January 31, 2003, by Roger A. Izzi, Ph.D., who both examined plaintiff and conducted psychological testing on plaintiff. Dr. Izzi diagnosed plaintiff with an unspecified depressive disorder and found plaintiff's intellectual functioning to be in the borderline to low-average range. A.R. 441-46. Dr. Izzi opined plaintiff is "moderately" limited in her ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, supervisors and co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting; "slightly" limited in her ability to make judgments on simple work-related decisions; and not limited in her ability to understand, remember, or carry out short, simple instructions. A.R. 447-49.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), may review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative

5

record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the

requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental

7

impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since the alleged onset of disability."  (Step One).  The ALJ then found plaintiff has an unspecified depressive disorder (Step Two);[5] however, she does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff cannot perform her past relevant work.  (Step Four).  Finally, the ALJ found there are a significant number of jobs in the national economy plaintiff can perform; therefore, she is not disabled.  (Step Five).

**IV**

The plaintiff contends the ALJ's assessment of her residual functional capacity[6] is not supported by substantial evidence because

---

[5] With regard to plaintiff's mental impairment, the ALJ found plaintiff has "mild" restriction in the activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties maintaining concentration, persistence or pace; and has experienced no episodes of decompensation. A.R. 189.

[6] A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff retains the RFC to perform a limited range of light work, as follows:

  lift and carry up to 20 pounds occasionally and 10
  pounds frequently; can stand, walk and sit for about 6

8

1 the ALJ improperly determined she is not a credible witness.  There is
2 no merit to this claim.

4     The plaintiff testified at the administrative hearing that she
5 injured her arm in 1985, resulting in the loss of feeling in a couple
6 of her fingers, which caused things to fall out of her hand, making it
7 difficult to work as a cashier.  A.R. 36-37.  The plaintiff stated she
8 gets angry when she drops things.  A.R. 41.  The plaintiff also
9 testified she was shot in the stomach in 1995, and the bullet is
10 lodged against her spine, causing her back problems.  A.R. 35-36.  The
11 plaintiff further stated she has "real bad" back problems and has
12 difficulty twisting her left arm.  A.R. 44-45.  Finally, plaintiff
13 testified she is depressed, anxious and stressed, sometimes forgets
14 things, has difficulty concentrating, hears voices of her dead mother
15 and nephew, and sees visions of her dead mother.  A.R. 38-40, 43, 206,
16 208-09, 211-12.

18     Once a claimant has presented objective evidence she suffers from
19 an impairment that could cause pain or other nonexertional
20 limitations, the ALJ may not discredit the claimant's testimony
21 "solely because the degree of pain alleged by the claimant is not
22 supported by objective medical evidence."  <u>Bunnell v. Sullivan</u>, 947

---

hours in an 8-hour workday; cannot perform more than minimal pushing and pulling with the left (non-dominant) hand; cannot perform repetitive strong grasping with the left hand; is limited to basic, unskilled work; should avoid requiring close teamwork, or work in close proximity to peers; and should avoid more than minimal contact with the general public.

A.R. 191.

9

F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion. Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). "Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (per curiam); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found plaintiff is not a credible witness for several reasons. Initially, the ALJ noted that plaintiff's daily activities include walking her child to school, going to the store, cooking and cleaning the bathroom. A.R. 187; see also A.R. 209, 441-42. "An ability to perform such [daily] activities may be seen as inconsistent with the presence of a condition which would preclude all work activity." Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990); see also Morgan, 169 F.3d at 600 (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for friend's child show claimant is able to work); Thomas, 278 F.3d at 959 (claimant's

10

daily activities, including cooking, laundry, washing dishes, and shopping support an adverse credibility finding); Orteza, 50 F.3d at 750 (claimant's ability to "perform[] various household chores such as cooking, doing the dishes, going to the store, visiting relatives, and driving" support ALJ's determination claimant's complaints of pain and fatigue are exaggerated and do not prevent him from performing light work).

The ALJ also found plaintiff has made inconsistent statements about her drug use, admitting to one physician she used marijuana on October 31, 2001,[7] but telling Dr. Izzi she has not used drugs since 1991.  A.R. 187; see also A.R. 442.  An ALJ may properly rely on inconsistencies in a claimant's statements to determine credibility. See Thomas, 278 F.3d at 959 (The ALJ properly rejected claimant's excess pain testimony based, in part, on finding claimant "had not 'been a reliable historian, presenting conflicting information about her drug and alcohol usage.'"); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (The ALJ offered clear and convincing reasons for rejecting claimant's testimony, including that "testimony and various statements regarding his drinking were not consistent.").

Additionally, the ALJ noted plaintiff's "minimal work history[,]" A.R. 187, which also supports the ALJ's adverse credibility determination.  See Thomas, 278 F.3d at 959 (finding claimant had "extremely poor work history" and showed "little propensity to work in her lifetime" supported adverse credibility determination).

---

[7] Plaintiff's medical records indicate she smoked marijuana in 2001.  A.R. 386, 393, 397.

11

Furthermore, the ALJ noted that, contrary to plaintiff's claims, plaintiff's symptoms have been well-controlled with medication and she has not experienced any side-effects from her medication, even though she was occasionally non-compliant. A.R. 187. This, too, is a proper basis to support an adverse credibility determination.[8] See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (noting lack of adverse side-effects in rejecting claimant's excess pain testimony); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ may properly consider "evidence suggesting that [claimant] responded well to treatment" in making adverse credibility determination); Orteza, 50 F.3d at 750 (affirming ALJ's adverse credibility determination based, in part, on ALJ's determination claimant "suffers no side effects from the prescription drugs he takes").

Thus, "[t]he ALJ's reasons for his credibility determination were clear and convincing, sufficiently specific, and supported by substantial evidence." Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); Thomas, 278 F.3d at 959.

---

[8] The ALJ also noted plaintiff's "spotty treatment record" for her mental impairment. A.R. 186-87. Although "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony[,]" Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Bruton, 268 F.3d at 828, the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999)(citations omitted)). Therefore, the Court does not consider plaintiff's "spotty treatment record" to be a clear and convincing reason supporting the ALJ's adverse credibility determination.

**V**

"The Commissioner has acknowledged certain impairments to be so severe as to preclude substantial gainful activity[, and] these impairments are set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  A claimant whose impairments or combination of impairments meets or equals the 'Listings' is presumptively disabled." Regennitter, 166 F.3d at 1298 n.2; Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  However, the mere diagnosis of an impairment in a Listing does not mean the claimant meets the Listing; rather, the claimant "must also have the findings shown in the Listing of that impairment."  20 C.F.R. § 416.925(d); Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990); see also Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that . . . she meets each characteristic of a listed impairment relevant to . . . her claim.").  Similarly, "[t]o equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment."  Id. (citation omitted); 20 C.F.R. § 416.926.  "A finding of equivalence must be based on medical evidence only."  Lewis, 236 F.3d at 514; Tackett, 180 F.3d at 1100.

Here, the ALJ found plaintiff's "impairments are not severe enough to meet or medically equal the requirements of a [Listing,]" including Listing 12.04.  However, plaintiff disagrees, citing the opinions of Dr. Mulokas, her treating physician, to support her claim.
//

**A.  Listing 12.04:**

Listing 12.04 provides, in pertinent part:

*Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. [¶] The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

[¶]  A. Medically documented persistence, either continuous or intermittent, of one of the following: [¶] 1. Depressive syndrome characterized by at least four of the following: [¶] a. Anhedonia or pervasive loss of interest in almost all activities; or [¶] b. Appetite disturbance with change in weight; or [¶] c. Sleep disturbance; or [¶] d. Psychomotor agitation or retardation; or [¶] e. Decreased energy; [¶] or f. Feelings of guilt or worthlessness; or [¶] g. Difficulty concentrating or thinking; or [¶] h. Thoughts of suicide; or [¶] i. Hallucinations, delusions, or paranoid thinking . . . AND

B. Resulting in at least two of the following: [¶] 1. Marked restriction of activities of daily living; or [¶] 2. Marked difficulties in maintaining social functioning; or [¶] 3. marked difficulties in maintaining concentration, persistence or pace; or [¶] 4. Repeated episodes of decompensation, each of extended duration. [¶]  OR

1      [¶]  C. Medically documented history of a chronic affective
2      disorder of at least 2 years' duration that has caused more
3      than a minimal limitation of ability to do basic work
4      activities, with symptoms or signs currently attenuated by
5      medication or psychosocial support, and one of the
6      following: [¶] 1. Repeated episodes of decompensation, each
7      of extended duration; or [¶] 2.  A residual disease process
8      that has resulted in such marginal adjustment that even a
9      minimal increase in mental demands or change in the
10     environment would be predicted to cause the individual to
11     decompensate; or [¶] 3. Current history of 1 or more years'
12     inability to function outside a highly supportive living
13     arrangement, with an indication of continued need for such
14     an arrangement.

20 C.F.R. § 404, Subpart P, App. 1, Listing 12.04.

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. § 416.927(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s). . . .").  Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Connett v. Barnhart, 340 F.3d 871, 874 (9th

Cir. 2003), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  Reddick, 157 F.3d at 725; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Mulokas opined plaintiff has recurrent major depression, in partial remission, with psychotic features, and she has "marked" restriction in her activities of daily living and social functioning, "frequent" deficiencies of concentration, persistence or pace, and has had "repeated" episodes of deterioration or decompensation in work or work-like settings.  A.R. 437-40.  The ALJ, however, rejected Dr. Mulokas's opinions because Dr. Mulokas "accepted the [plaintiff's] subjective statements uncritically [even though] the evidence as a whole shows that she is not credible. . . ."  A.R. 185.  "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"  Morgan, 169 F.3d at 602 (citations omitted); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, as discussed above in Part IV, substantial evidence supports the ALJ's adverse credibility determination of plaintiff.  Moreover, the administrative record also supports the ALJ's finding that Dr. Mulokas uncritically accepted plaintiff's subjective complaints.  See, e.g., A.R. 437, 460, 475.  Therefore, this is a specific and legitimate reason for rejecting Dr. Mulokas's opinions.  See, e.g., Bayliss, 427 F.3d at 1217 (ALJ properly rejected physicians' opinions of claimant's mental impairment when one opinion was based on claimant's complaints

16

and information submitted by her family, friends, and a former counselor, but not on objective medical data or medical reports, and another opinion was based on claimant's complaints and was not supported by clinical evidence); Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (The ALJ did not err in rejecting treating physician's opinion that claimant was disabled due to depression where treating physician "provided nothing more than a statement of his unsupported opinion[; t]here was no description — either objective or subjective — of medical findings, personal observations or test reports upon which [the treating physician] could have arrived at his conclusion.").

The ALJ also rejected Dr. Mulokas's opinions because they were "out of proportion to his own findings[,]" which demonstrated plaintiff responded well to the mental health treatment she received. A.R. 185. Indeed, Dr. Mulokas's treatment notes simply do not reflect the "marked" limitations he ascribes to plaintiff; rather, the treatment notes state plaintiff's mood improved with treatment, she was no longer as angry or anxious as before, she was eating and sleeping better, her self-esteem had improved and she reported "'everything [was] better'" and "'everything [was] fine.'" See, e.g., A.R. 469-70, 472-74. An ALJ may properly reject a treating physician's opinions that are inconsistent with his treating notes; therefore, this also is a specific and legitimate reason for rejecting Dr. Mulokas's opinions. See, e.g., Connett, 340 F.3d at 875 (ALJ properly rejected treating physician's opinion contradicted by his own notes); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating physician's opinion claimant was totally

17

disabled when opinion was inconsistent with physician's examination findings). Thus, there is no merit to plaintiff's claim that she meets or equals Listing 12.04.

**B. Listing 12.05C:**

The plaintiff also contends she meets or equals the requirements of Listing 12.05C, which provides:

> *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22. [¶] The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function.[9]

20 C.F.R. § 404, Subpart P, App. 1, Listing 12.05C (footnoted added).

---

[9] "The IQ scores in [Listing] 12.05[C] reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. . . . In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [SSA] use[s] the lowest of these in conjunction with 12.05." 20 C.F.R. § 404, Subpart P, App. 1, 12.00(D)(6)(c).

18

1    Dr. Izzi administered to plaintiff the Wechsler Adult Intelli-
2 gence Scale III, which showed plaintiff has a verbal IQ of 80, a
3 performance IQ of 72, and a full scale IQ of 74.  A.R. 444.  As
4 plaintiff concedes, see Joint Stip. at 22:16-17, these findings do **not**
5 meet the requirements of Listing 12.05C.  See Lewis, 236 F.3d at 514
6 ("A claimant can only meet [the listing for mental retardation] if
7 . . . she has verbal, performance or full scale IQ of 70 or less along
8 with some additional impairment, or a full scale IQ of 59 or less.");
9 Howard v. Massanari, 255 F.3d 577, 582-83 (8th Cir. 2001) (substantial
10 evidence supported ALJ's decision claimant did not meet or equal
11 listing 12.05C when plaintiff's IQ was determined to be 71).

13    Nevertheless, plaintiff contends these findings, in combination
14 with her physical and mental problems, are sufficient to equal the
15 requirements of Listing 12.05C.  However, the Appeals Council
16 disagreed, finding "[p]sychological testing revealed the [plaintiff] to
17 be functioning within the borderline range to low average range which
18 is inconsistent with mental retardation as required by Listing 12.05C.
19 Further, the doctor reported only moderate vocational limitations which
20 is inconsistent with listing level severity."  A.R. 169.  Substantial
21 evidence supports this conclusion.  In interpreting the psychological
22 tests, Dr. Izzi found plaintiff's "present level of intellectual
23 functioning is within the borderline range to low average range
24 . . ."; he did not find plaintiff is mentally retarded.  A.R. 445.
25 Similarly, Dr. Mulokas found plaintiff does **not** have a low IQ or
26 reduced intellectual functioning.  A.R. 439.  In fact, plaintiff's
27 intellectual functioning has been repeatedly found to be "unimpaired"
28 and her fund of knowledge "average" or "above average."  A.R. 395, 463.

19

Moreover, plaintiff has not shown, as required by Listing 12.05C, that she experienced "significantly subaverage general intellectual functioning with deficits in adaptive functioning . . . before age 22." Foster v. Halter, 279 F.3d 348, 354-55 (6th Cir. 2001). Rather, plaintiff's ability to work as a cashier after age 22 suggests she had the ability to perform relatively complicated tasks before she was injured.[10] Id. at 355 (Evidence does not support an onset of "deficits in adaptive functioning" before age 22 when claimant's "work as an accounting clerk at a bank and a liquor store clerk prior to injuring her leg demonstrate that she had the ability to perform relatively complicated tasks prior to the injury to her leg. . . ."). In short, there is no merit to plaintiff's claim that she meets or equals the requirements of Listing 12.05C.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  March 6, 2007                    /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
                                        UNITED STATES MAGISTRATE JUDGE

---

[10]  Plaintiff reported she lost her job as a cashier because of problems with her hands, rather than any mental difficulties in performing the jobs. A.R. 36, 394.

R&R\05-0165.mdo
3/6/07